March 22, 1977

## 77–13 MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

### Washington, D.C., Hostage Situation: Basis for Federal Jurisdiction

The United States Attorney for the District of Columbia is under the immediate supervision of the Attorney General, in a chain of command sense, because of the Federal Government's responsibility for the District and the U.S. Attorney's role as chief prosecutor of crimes arising under the District of Columbia Code. For this reason, and apart from any consideration of Federal jurisdiction based on violations of Federal law, the Attorney General has a basis on which to participate with the U.S. Attorney in formulating a response to situations such as this. Section 533 of Title 28 provides that the Attorney General may appoint officials to conduct investigations regarding official matters under the control of the Department of Justice. In our opinion, this statute provides the Attorney General, at least, with authority to provide investigative support to local officials in connection with actions of a local nature within the District. This conclusion arises from the relationship between the U.S. Attorney and the Department of Justice. This statute does not, of course, provide a basis for the assertion of Federal jurisdiction based on the commission of a substantive Federal offense.

In addition, with respect to the use of Justice Department personnel (the Federal Bureau of Investigation (FBI), for example) in the investigative stages of the hostage incident, it is our conclusion that the FBI guidelines do permit the Bureau to conduct an investigation to determine whether a Federal substantive offense has been committed.

Finally, it is the conclusion of this Office that four Federal statutes furnish a possible basis for Federal jurisdiction, and they are as follows:

1. Under 18 U.S.C. § 922(d)(4) it is unlawful for any person who has been adjudicated a mental defective or who has been committed to any mental institution to receive any firearm or ammunition that has been shipped or transported in interstate commerce. Firearms are not manufactured in the District. According to information we received, the leader of the group apparently responsible for this situation had been

declared a mental defective. On the basis of these facts, it would appear that this statute was violated or that, at least, there was a reasonable basis for investigating to determine whether it had been violated.

2. Under 18 U.S.C. § 231(a)(2) it is a Federal offense for one to transport in commerce a firearm knowing or having reason to know or intending that it will be used unlawfully in furtherance of a civil disorder. "The term 'civil disorder' means any public disturbance involving acts of violence by assemblages of three or more persons, which cause an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). Our information established that there were more than three persons involved in this incident and clearly the remaining requirements of this definition were met. Likewise, the transportation-in-commerce requirement was met by virtue of the definition of that term in 18 U.S.C. § 232(2) which provides as follows:

> The term 'commerce' means commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia.

Again, the facts available to us indicate that this statute had been violated.

3. The Riot Statute, 18 U.S.C. § 2101(a)(1), provides as follows:

> Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent—(A) to incite a riot; or (B) to organize, promote, encourage, participate in or carry on a riot; or (C) to commit any act of violence in furtherance of a riot; or (D) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot; and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph [is guilty of a federal offense].

Our information was that the U-Haul truck used by those persons instigating this incident was rented in College Park, Maryland, thus apparently fulfilling the requirement of § 2101(a)(1). The term "riot" is defined in § 2102(a) in such a manner as to include the actions of those involved in this incident because there were acts of violence by an assemblage of at least three persons that constituted a clear and present danger of damage or injury to the person or property of other individuals. Therefore, it again appeared that, based on the information available to us, a Federal crime had been committed under this statute.

4. One of the Civil Rights statutes, 18 U.S.C. § 245, may also come into play here because of the apparently religious-based motives of the perpetrators of this incident, and because of the implications of their choice of the B'nai B'rith building and The Islamic Center and the occupants thereof as targets for their actions. It should be noted that this statute provides the weakest basis for the assertion of Federal jurisdiction. This is because this statute is designed to cover federally protected activities, such as voting, employment, jury duty in the United States courts, participation in Federal programs, education, travel and the use of certain facilities in connection with travel. It does not appear, or at least we did not have facts indicating, that these so-called federally protected activities were implicated by this incident except in perhaps a tangential manner.

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*